### George Elvis, a minor, by Charles Elvis, his next friend, Appellee, v. Lumaghi Coal Company, Appellant.

1. NEGLIGENCE—*when doctrine of res ipsa loquitur applies.* The doctrine of *res ipsa loquitur* applies where the injury results from an unassignable cause and the servant was at the time thereof in the exercise of ordinary care for his own safety.

Action in case for personal injuries. Appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1907. Affirmed. Opinion filed March 18, 1908.

DANIEL McGLYNN and C. E. POPE, for appellant.

WEBB & WEBB, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee, George Elvis, a minor, by his next friend, brought suit against appellant in the Circuit Court of St. Clair county, to recover damages for injuries sustained by him on February 22, 1907, while employed as a mule driver in appellant's coal mine, by reason of the explosion of a certain air receiver or tank at the bottom of the shaft in said mine.

The declaration filed by appellee contained a number of counts, all of which were withdrawn from the jury at the close of appellee's evidence by the court,

except two.  One of the remaining counts charged that appellant at its mine maintained an air compressor by steam power, and had a certain air receiver or tank at the bottom of the shaft of said mine; that appellant so negligently maintained and operated said compressor and the pipes leading to said receiver or tank, as to allow oil used in and around said compressor to run and seep through said pipes into said receiver, causing the oil to accumulate in large quantities, to mingle with the air in the receiver, and thereby generate dangerous gases and explosives, rendering said tank or receiver liable to be blown up by an explosion and injure appellant's servants working near by, which appellant well knew or might by the exercise of due care have known; that while appellant was working in close proximity to said receiver or tank in the exercise of due care, the tank exploded and he was severely injured.  The other of said counts charged that appellant so carelessly and negligently maintained, kept, handled, operated, managed and controlled said receiver and compressed air, as to allow the same to explode and injure the plaintiff.  The general issue was filed and the trial resulted in a verdict and judgment in favor of appellee for $3,000.

It appeared from the evidence in the case that appellant was at the time in question engaged in operating a coal mine in Madison county and in doing so used mining machines or drills operated by compressed air, supplied from compressors at the top of the mine,

The air after being compressed in a tank at the top of the mine was carried through a six inch pipe to the bottom of the shaft, a distance of some 200 feet into another receiver or tank.  The receiver at the bottom was a round tank about twelve feet long and forty-eight inches in diameter at the bottom of which there was a stop cock or valve for the purpose of letting out water, oil and other substances accumulating in it.  From the side of this tank a five inch pipe extended through the main entries of the mine and from it smaller pipes

distributed the compressed air through the different rooms for use in the machines. On the day above named, a little before noon, there was an explosion which tore the tank open from one end to the other and entirely blew away one end of it. The five-inch supply pipe was also burst open at short intervals for a distance of nearly 800 feet. At the time of the explosion appellee was driving from the south towards the shaft, and was about seventy feet distant from it. He was knocked down and received injuries which, it is not denied by appellant, were severe and permanent in character.

The compressor cylinders were lubricated by oil fed automatically at the rate of four or five drops a minute, while the machine was in operation. So much of this oil as was not consumed together with water formed by condensation, escaped through the pipes and accumulated in the tanks or receivers at the top and bottom of the mine. Each of these receivers had a valve at the bottom which was usually opened each day when the mine was running, to let out the accumulation of oil and water. The compressing machinery and tanks were shown to have been in charge of a competent engineer and to have been made of strong and proper materials. The compressors had not been run for two days previous to the time of the injury to appellee. During those two days the stop cock in the bottom of the receiver which exploded, was not turned, nor was it turned on the day of the explosion, although there appears to have been an employe whose duty it was to attend to this matter. It was shown that on the morning of the explosion this employe sat down near the receiver to dry his clothing and found that the pipe and receiver were warmer than usual. On the third day previous to the accident, the valve had been opened and the surplus oil and water blown out. After the explosion the men who had been working in the vicinity of the tank and pipes, which were blown open, found themselves covered with a thick, black,

sticky oil, which had evidently come from the tank and pipes. There was no defect shown in the machinery or negligence on the part of those operating it, other than that the tanks had not been scrubbed out since the machine was installed some six years before, and the valve had not been opened in the bottom to let out the oil and water for nearly three days.

Appellee insists that the accident was caused by the explosion of gas, generated by an accumulation of oil in the tanks and pipes; that to let the oil and water accumulate as was done, was negligence; that when appellant's employe, whose duty it was to open the valve, found that the receiver and pipes were warmer than usual, this was notice to him and to appellant that a dangerous condition existed and that the facts were such that the doctrine of *res ipsa loquitur* applies.

Appellant contends the facts in the case were not sufficient to sustain the verdict and that the trial court erred in giving certain instructions for appellee, and in its rulings in regard to the evidence. In this case appellee was admittedly in the exercise of due care for his own safety, and was injured by circumstances with which he had nothing to do, while following the business for which he was employed by appellant. The machinery which caused the injury was under the control of appellant and we are of opinion that the doctrine of *res ipsa loquitur* applies, that the occasion itself imports *prima facie* negligence on the part of appellant.

The case of I. C. R. R. Co. v. Phillips, 55 Ill. 194, was one where the appellee had been injured by the explosion of a boiler of the appellant railroad company in the Union Depot at Chicago. The case had been up to the Supreme Court before, where it was reversed and remanded. The court says in its first opinion, in 49 Ill. 234: "Every day's experience teaches, that where the proper quality of iron has been selected under the usual tests, with reasonable care

by skillful and experienced persons, they (steam boilers) are safe in their use for practical purposes. Knowing this, when an explosion has occurred, it is natural to conclude that there has been negligence in selecting, testing, or putting the materials together, when constructed into a boiler, or that it has been negligently used, by subjecting it to too high a degree of pressure by steam. It would, therefore, be improper to say that an explosion is not *prima facie* evidence of negligence." When the case was again before them the court said: "This court held in this case in 49 Ill. *supra*, that the mere fact that the boiler exploded, was *prima facie* evidence of negligence and that the burden of disproving the negligence, was thrown upon the company." The court then states, as it had formerly, how the *prima facie* case might be overcome by evidence and further says, "we have again carefully considered the question and the arguments adduced and adhere to the former opinion, as to the inference from the explosion."

We cannot find that the doctrine above enunciated has ever been repudiated by our Supreme Court.

In I. C. R. R. Co. v. Prickett, 109 Ill. App. 468, this court discusses the above case and others upon the same subject in a case where an engineer had been killed by the explosion of a locomotive engine and said: "We think that the rule may be thus stated: An explosion of a locomotive boiler, whereby passengers or others, to whom the company owes the duty of care, such others not being charged with the management of the engine, is *prima facie* evidence of negligence on the part of the railroad company."

It is claimed by appellant that the doctrine of *res ipsa loquitur* is inapplicable in an action between master and servant. We are of opinion, however, that the true rule is laid down in Goddard v. Enzler, 123 Ill. App. 108, where, in the opinion written by Mr. Justice Vickers, it is said, after a discussion of the subject: "Most of the cases where the maxim of *res*

*ipsa loquitur* is applied, grow out of the relation of passenger and carrier, but it applies in a proper case between master and servant.'' In this case, appellee, while in the employ of appellant, had nothing to do with the management of the machinery used for compressing air, but was engaged in an entirely different line of business, and no reason appears to us arising out of the law or facts why the rule should not apply in his case. Nor do we find that the *prima facie* case made out by appellee has been overcome by other proof in the case.

Objections are made by appellant to several of the instructions given for appellee, but they are technical in character and do not appear to us to be of substantial merit, while eighteen instructions given for appellant appear to have fully stated its theory of the law applicable to the case.

Appellant contends that the court erred in permitting the witness Jeckstadt to testify as to how he was affected by the explosion, because it was not his case which was being tried, and it was immaterial how the explosion affected him; also that other witnesses were permitted to testify to what happened at the time of the explosion some 300 feet away from the tank. This evidence was proper as showing the extent and force of the explosion. Other objections were made in regard to the evidence but upon the whole we find that the court committed no error in respect to the same.

The verdict of the jury appears to us to be warranted by the evidence and as no substantial error was committed by the court in the trial of the cause, the judgment of the court below will be affirmed.

*Affirmed.*